1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9   Troyce Braninburg,                    )    No. 1:08-CV-01457-MHM
                                           )
10              Plaintiff,                 )    **ORDER**
                                           )
11  vs.                                    )
                                           )
12  Coalinga State Hospital, et al.,       )
                                           )
13              Defendants.                )
                                           )
14  ─────────────────────────────────────

15

16          Currently before the Court is Defendants' Motion for Summary Judgment.

17  (Doc. 31).  After reviewing the motions, the responses and replies thereto, as well as the

18  applicable law, the Court issues the following order.

19                    **MOTION FOR SUMMARY JUDGMENT**

20          Plaintiff Troyce "Tabitha" Braninburg is a transgender female patient in the custody

21  of Coalinga State Hospital ("CSH").  Plaintiff, proceeding *pro se,* filed the present civil rights

22  complaint pursuant to 42 U.S.C. § 1983 for acts that she[1] alleged took place at CSH.  In

23  Counts One and Two, Plaintiff claims that Defendants were deliberately indifferent to

24  Plaintiff's safety and security needs by taking no remedial action to stop other patients from

25  sexually and verbally harassing her.  Plaintiff further alleges, in Count Four, that two

26

27  ─────────────────────

28          [1] Plaintiff is referenced as "he" by Defendants and in a prior Court order.  However,
    Plaintiff asks to be referred to as "she." (Doc. 35, p. 2, ¶4).

1    California Department of Corrections and Rehabilitation ("CDCR") officers fondled her

2    breasts outside CSH before transporting her for medical treatment and placed metal restraints

3    on her legs so tightly that they cut her skin.  Finally, in Count Six, Plaintiff alleges that

4    Defendants have segregated her and discriminated against her in her housing placement.

5    Defendants Avila, Adams, Singh, Reed, and Meek seek summary judgment on all of

6    Plaintiff's claims.

7    **I.      PROCEDURAL HISTORY**

8            In a February 13, 2009 Order, the Court dismissed Plaintiff's Complaint for failure

9    to state a claim, and gave Plaintiff 30 days to file an amended complaint.  (Doc. 8).  On

10   March 10, 2009, Plaintiff filed a Motion for 30 Days Expansion of Time, which the Court

11   granted in a March 19, 2009 Order.  (Doc. 9).

12           On April 24, 2009, Plaintiff filed a First Amended Complaint.  (Doc.11).  In a May

13   14, 2009 Order, the Court dismissed Plaintiff's First Amended Complaint, pursuant to Rule

14   41(b) of the Federal Rules of Civil Procedure, because Plaintiff failed to comply with the

15   Court's Order requiring Plaintiff to submit her First Amended Complaint on the form

16   provided with the February 13, 2009 Order.  (Doc. 12).  The Court granted Plaintiff's motion,

17   giving her 30 days to file a second amended complaint on the form provided with the Order.

18   (Doc. 12).

19           On June 15, 2009, Plaintiff filed a Second Amended Complaint, (Doc. 13), and on

20   July 8, 2009, Plaintiff filed a motion for leave to amend the Second Amended Complaint.

21   (Doc. 14).  In an August 17, 2009 Order, the Court granted Plaintiff 30 days to file a third

22   amended complaint.  (Doc. 15).

23           On September 14, 2009, Plaintiff filed a seven-count Third Amended Complaint.

24   (Doc. 16).  In an October 20, 2009 Order, the Court dismissed Counts Three, Five, and

25   Seven, and dismissed Defendants Jova, Walters, Pachardo, Woods, Taylor, Fletcher, and

26   Does 1-99. (Doc. 17). The Court concluded that, liberally construed, Plaintiff stated a claim

27   in Count One against Defendant Avila, for deliberate indifference by failing to stop a CSH

28   patient from sexually harassing Plaintiff; a claim in Count Two against Defendant Reed, for

1   deliberate indifference in not pressing the emergency alarm when a CSH patient attacked
2   Plaintiff; a claim in Count Four against Defendants Two Unidentified CDCR Officers, for
3   fondling Plaintiff's breasts before transporting her for medical treatment and placing
4   excessively tight metal restraints on Plaintiff's legs, causing her legs to bleed; and a claim
5   in Count Six against Defendants Adams, Singh, and Meek, for refusing to assign her to
6   different housing after a patient threatened to kill or hurt her. (Id.). The Court did not direct
7   that service be made on Defendants Two Unidentified CDCR Officers, as the Court was
8   unable to identify them. (Id.). The Court, however, did not dismiss the claims against those
9   Defendants and stated that Plaintiff could use the discovery process to obtain their names and
10  amend her Third Amended Complaint to name them. (Id.).

11          On December 28, 2009, Plaintiff sent a letter to the Clerk of Court requesting to make
12  corrections and changes to the Third Amended Complaint. (Doc. 20). On February 25,
13  2010, the Court denied Plaintiff's request to file a Fourth Amended Complaint, stating that
14  Plaintiff improperly communicated directly with court personnel, and that Plaintiff had ample
15  opportunities to include such changes in her prior amended complaints. (Doc. 21).

16          On May 7, 2010, Defendants filed a motion requesting a 45-day extension to file
17  responsive pleadings to Plaintiff's complaint, (Doc. 23), and the Court granted the extension
18  in a May 19, 2010 Order. (Doc. 24). On June 21, 2010, Defendants filed an answer to
19  Plaintiff's Third Amended Complaint. (Doc. 25). On March 21, 2011, the Court issued a
20  Rule 16 Scheduling and Discovery Order. (Doc. 26). On January 13, 2012, Defendants filed
21  a motion requesting a 90-day extension on the deadline to file dispositive motions. (Doc.
22  27). The Court granted in part and denied in part Defendants' motion, ordering that
23  dispositive motions be filed by February 20, 2012, and stating that no further extensions
24  would be granted. (Doc. 28).

25          On February 17, 2012, Defendants filed a motion requesting a one-week extension to
26  file dispositive motions, (Doc. 29), which the Court granted for good cause on February 21,
27  2012. (Doc. 30). On February 27, 2012, Defendants filed the instant motion for Summary
28  Judgment. (Doc. 31). On March 12, 2012, the Court issued an Order alerting Plaintiff to

1   Defendant's motion. (Doc. 32). On March 15, 2012, Plaintiff filed a motion requesting a

2   90-day extension to respond to Defendant's summary judgment motion. (Doc. 33). The

3   Court granted this motion on March 19, 2012. (Doc. 34).

4            On May 17, 2012, Plaintiff filed a motion objecting to summary judgment. (Doc. 35).

5   Defendants filed a reply to Plaintiff's opposition on June 18, 2012. (Doc. 36).

6   **II.    FACTUAL BACKGROUND**

7            CSH is a maximum security psychiatric facility in Coalinga, California, offering

8   therapeutic treatment for sex offenders and individuals with mental illnesses. (Defendants

9   Statement of Facts ("DSOF"), p. 3, ¶7). Plaintiff is civilly committed at CSH as a sexually

10  violent predator, (Id. at ¶10), and is a self-described "male-to-female pre-op transgendered

11  female." (Id. at ¶13). She alleges that Defendants, employees of CSH, acted with deliberate

12  indifference as she was sexually and verbally harassed by other patients on several occasions.

13  (Id. at ¶15). She further alleges that she has been segregated and discriminated against in her

14  housing placement.

15           **A.    Facts relevant to Defendants Avila**

16           Plaintiff alleges in Count I that Defendant Avila was deliberately indifferent to her

17  safety and security needs by failing to stop CHS patients from sexually harassing her. In

18  2007, Defendant Avila was the Unit Supervisor for Unit 5, the unit in which Plaintiff was

19  housed. (Id., p. 4, ¶1). The duties of a Unit Supervisor include overseeing the functions of

20  the unit, giving directions to staff, consulting with clinicians, and supervising the needs of

21  patients. (Id. at ¶5). Plaintiff resided in a single room in Unit 5, where Defendant Avila

22  observed Plaintiff generally socializing well with her peers without any significant behavior

23  problems. (Id. at ¶17). If patients at CSH have conflicts with each other, staff will consult

24  with each patient and may separate their room locations by placing the individuals in

25  different hallways. (Id. at ¶13). If the conflict continues, staff will relocate a patient to a

26  different unit in CSH. (Id. at ¶15).

27

28

1    On one occasion, Plaintiff alerted Defendant Avila to a non-threatening note left in

2    Plaintiff's room and a suggestive cartoon placed on her window anonymously.[2] (Id. at ¶21).

3    In her Third Amended Complaint, Plaintiff contends that she informed Defendant Avila that

4    patient Mr. M was sexually harassing her, and that Defendant Avila took no remedial action

5    to stop the harassment. (Doc. 16, p. 3). Conversely, Defendant Avila contends that, apart

6    from the incident involving the anonymous note, she never spoke with Plaintiff regarding

7    harassment by Mr. M, never witnessed patients threaten Plaintiff, and never refused to

8    intervene if Plaintiff was under a threat of harm. (DSOF, p. 5, ¶17).

9    **B.    Facts Relevant to Defendant Reed**

10    In Count II, Plaintiff asserts that Defendant Reed was deliberately indifferent to

11    Plaintiff's safety and security by standing idly by while a CSH patient physically attacked

12    her. Defendant Reed was a Senior Psychiatric Technician at CSH from January 2008 to

13    December 2010. (DSOF, p.5, ¶19). Defendant Reed asserts that he never witnessed Plaintiff

14    in a physical altercation with another patient, and that he was not working on July 4, 2008,

15    one of the days on which Plaintiff alleges she was physically attacked. (Id. at ¶ 21). CSH

16    administration and Hospital Police conducted an investigation of the alleged attacks, but

17    hospital records indicate staff could not complete the investigation due to Plaintiff's failure

18    to cooperate. (Id., p. 6, ¶1).

19    On one occasion, Defendant Reed physically intervened between Plaintiff and another

20    patient, Mr. R., as they exchanged verbal insults. (Id. at ¶6). Defendant Reed quieted

21    Plaintiff and Mr. R, and physically intervened between them to avoid any escalation. (Id.).

22    Defendant Reed did not feel the situation required activation of the emergency alarm, which

23    he is trained to use when someone is in physical danger. (Id. at ¶9). In her complaint,

24

25

26    _____

27    [2] Neither party specifically describes the substance of the cartoon or the note. Plaintiff
disputes Defendant Avila's characterization of the note as non-threatening, (Doc. 35, p. 5, ¶20), but

28    has not put forth any evidence in support of this assertion.

1    Plaintiff asserts that Defendant Reed witnessed a patient attack her and "merely stood by,

2    doing nothing." (Doc. 16, p. 4).[3]

3         **C.    Facts Relevant to Defendants Singh, Meek, and Adams**

4         In Count Six, Plaintiff contends that Defendants Singh, Meek, and Adams did not

5    promptly reassign her housing placement after Plaintiff was housed with a patient who

6    threatened to kill her. She additionally alleges that, while CSH staff ultimately moved her to

7    a different dorm, she has been "segregated and discriminated" against by Defendant Meek.

8    (Doc. 16, p. 5c).

9         During the time of Plaintiff's complaints in 2009, Defendant Singh was the Medical

10   Director at CSH, where his duties included: acting as the primary physician of the hospital,

11   developing policies for clinical practice, and directing treatment programs. (DSOF, p. 6-7).

12   He neither made the patient housing placements in 2009, nor made any decisions regarding

13   moving a patient from one room to another based upon their preferences. (Id. at 7, ¶34).

14   Defendant Meek was the acting Program Director at CSH in 2009. (Id., ¶15).[4]

15        In February of 2009, Plaintiff was at court and thus out of the facility for several days.

16   (DSOF, p. 8, ¶10). After she returned, Plaintiff complained that other residents in her dorm,

17   particularly Mr. P, did not want her there and harassed her. (Id. at ¶12). The first report to

18   staff about Mr. P was on February 17, 2009, regarding a verbal threat, and staff prepared an

19   Incident Report according to hospital protocol. (Id. at ¶18). Following this complaint, staff

20   increased their supervision of Plaintiff. (Id. at ¶14). Defendant Meek contends that he never

21   saw patients harass or assault Plaintiff, but that he nevertheless conducted an investigation

22

23
24        [3] In her opposition motion, Plaintiff objects to various points in DSOF, asserting that: (1)
     CSH Administration did not conduct a meaningful investigation into her complaints of assault; and
25   (2) Plaintiff never failed to cooperate in any investigation of her complaints. Plaintiff again presents
     no evidence in support of these contentions.

26
          [4] Neither party provides any information as to Defendant Adams' identity, occupation, or
27   involvement in the matter. Plaintiff does not make any specific allegations against Defendant
     Adams, aside from broadly alleging that "Drs. Adams and Singh, and Daniel [Meek] refused to
28   assign [her] to other housing." (Doc. 16, p. 5c).

1   into Plaintiff's complaints of harassment from dormmates in February 2009. (Id., p. 8, ¶17).

2   On or about March 5, 2009, Plaintiff was transferred from unit 8 to unit 11 and into a single

3   room.  (Id. at  ¶16).  Plaintiff does not deny that CSH staff ultimately rehoused her, but

4   alleges that Defendant Meek has segregated her and discriminated against her in the new

5   housing placement.

6   **III.   STANDARD OF REVIEW**

7          A motion for summary judgment may be granted only if the moving party shows "that

8   there is no genuine issue of material fact and that the moving party is entitled to judgment

9   as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of

10  establishing the absence of any genuine issue of material fact; the moving party must present

11  the basis for its summary judgment motion and identify those portions of the record that it

12  believes demonstrate the absence of a genuine issue of material fact.  Chelates Corp. v.

13  Citrate, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001).

14

15         A material fact is one that might affect the outcome of the case under governing law.

16  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In addition, in order to preclude

17  summary judgment, a dispute about a material fact must also be "genuine," such that a

18  reasonable jury could find in favor of the non-moving party.  Id.  In determining whether the

19  moving party has met its burden, the Court views the evidence in the light most favorable to

20  the nonmovant.  Allen v. City of L.A., 66 F.3d 1052, 1056 (9th Cir. 1995).  The Court may

21  not make credibility determinations or weigh conflicting evidence.  Musick v. Burke, 913

22  F.2d 1390, 1394 (9th Cir. 1990).  Further, the Court must draw all reasonable inferences in

23  favor of the nonmovant.  Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

24         If the moving party meets its burden with a properly supported motion for summary

25  judgment, then the burden shifts to the nonmoving party to present specific facts that show

26  there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith

27  Radio, 475 U.S. 574, 587 (1986).  To defeat a motion, the non-moving party must show that

28  there are genuine factual issues "that properly can be resolved only by a finder of fact

1  because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at

2  250. The party opposing summary judgment "may not rest upon mere allegations or denials

3  of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine

4  issue for trial." Fed. R. Civ. P. 56(e); see also Matsushita Elec., 475 U.S. at 586-87.

5  Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion

6  for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

7       The question on motion for summary judgment is thus whether the evidence "presents

8  a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

9  party must prevail as a matter of law." Anderson, 447 U.S. at 251-52. A court is not required

10  to probe the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d

11  1275, 1279 (9th Cir. 1996). The nonmovant has the burden of identifying with reasonable

12  particularity the evidence that precludes summary judgment. See Carmen v. S.F. Unified

13  Sch. Dist., 237 F.3d 1026, 1028-29 (9th Cir. 2001) (holding that even if there is evidence in

14  the record that creates a genuine issue of material fact, a district court may grant summary

15  judgment if the opposing party's papers do not include or conveniently refer to that

16  evidence). The mere existence of a scintilla of evidence supporting the nonmovant's petition

17  is insufficient; there must be evidence from which a trier of fact could reasonably find for the

18  nonmovant. Anderson, 447 U.S. at 252; see Matsushita Elec., 475 U.S. at 586 (holding that

19  nonmovant's showing of "some metaphysical doubt" as to material facts is insufficient to

20  defeat summary judgment).

21  **IV.   DISCUSSION**

22       **A.   Alleged Due Process Violations**

23       Throughout her Third Amended Complaint and opposition motion, Plaintiff

24  characterizes Defendants' conduct as "deliberately indifferent" to her safety and security

25  needs.[5] However, in Paragraph 1 of each count, Plaintiff states that Defendants violated her

26  _____

27       [5] A claim of "deliberate indifference" alleges that prison officials have violated an inmate's
    Eighth Amendment rights to adequate medical care. Estelle v. Gamble, 429 U.S. 97 (1976) (holding
28  that the Eighth Amendment's prohibition against cruel and unusual punishment is applicable to the

1 Due Process rights, not her Eighth Amendment rights.  Her claims will thus be analyzed

2 under the 14th Amendment Due Process Clause.  Moreover, this is the proper standard in

3 light of the fact that Plaintiff does not allege a denial of medical treatment, but instead

4 challenges her conditions of confinement.

5      The Due Process Clause of the 14th Amendment protects a civil detainee's right to

6 adequate conditions of confinement, including the right to "adequate food, shelter, clothing,

7 and medical care" as well as "reasonably safe conditions of confinement." See Youngberg

8 v. Romeo, 457 U.S. 307, 314-16 (1982).  In determining whether the state has met its

9 Constitutional duty of providing reasonably safe conditions, "decisions made by the

10 appropriate professional are entitled to a presumption of correctness." Id. at 324.  To incur

11 liability, a professional must make a decision that "is such a substantial departure from

12 accepted professional judgment, practice, or standards as to demonstrate that the person

13 responsible actually did not base the decision on such a judgment." Id. at 323; Houghton v.

14 South, 965 F.2d 1532, 1536 (9th Cir. 1992).  The Court's inquiry is thus limited to "two

15 questions: (1) whether the decisionmaker is a qualified professional entitled to deference, and

16 (2) whether the decision reflects a conscious indifference amounting to gross negligence, so

17 as to demonstrate that the decision was not based upon professional judgment." Id. at 1535.

18      After careful consideration of Plaintiff's Third Amended Complaint and the instant

19 motion, the Court finds that Plaintiff has failed to marshal enough evidence to create a triable

20 issue of material fact with respect to her allegations against Defendants Avila, Reed, Singh,

21 Meek, and Adams.

22      **1.   Defendant Avila**

23      Defendants contend that Plaintiff fails to raise an issue of material fact regarding

24 Defendant Avila, because Defendant Avila neither witnessed Plaintiff being threatened, nor

25 spoke with Plaintiff regarding the alleged harassment by patient Mr. M.  At most, Defendant

26 _____

27 states through the Due Process Clause of the Fourteenth Amendment, and mandates that states
provide adequate medical care to all of their prisoners.).

28

1   Avila states that she knew of a non-threatening note and cartoon placed in Plaintiff's room.

2   (Doc. 31, p. 2, ¶7).

3          Defendant Avila's conduct did not violate Plaintiff's Due Process rights, as it does not

4   come close to being a substantial departure from accepted professional judgment.

5   Youngberg, 457 U.S. at 323.   In one case of failed professional judgment, a hospital

6   superintendent received multiple complaints that a male staff member had sexually assaulted

7   female patients, and nevertheless allowed that staff member to continue working in seclusion

8   with a female patient until he ultimately molested her.  Neely v. Feinstein, 50 F.3d 1502 (9th

9   Cir. 1995).   In another instance, a detainee was repeatedly raped by his cellmate, and

10  challenged prison policies which integrated sexually violent prisoners into the general

11  population.  Redman v. Cnty. of San Diego, 942 F.2d 1435 (9th Cir. 1991).  The 9th Circuit

12  held that these policies exposed inmates to known dangers, jeopardized their personal

13  security, and thus the defendants' "conduct was so reckless as to be tantamount to a desire

14  to inflict harm." Id. at 1447-48.

15         In contrast, Plaintiff puts forth no evidence that Defendant Avila failed to exhibit

16  professional judgment.  She does not state with any specificity when the alleged incidences

17  of threats and sexual harassment occurred while residing in Unit 5, or put forth any evidence

18  suggesting Defendant Avila knew about the alleged harassment.  She also fails to show that

19  Defendant Avila's conduct led to any ensuing harm.  In short, even when viewed in the light

20  most favorable to Plaintiff, Defendant Avila's conduct does not create a triable issue of

21  material fact regarding her professional judgment.  Accordingly, her conduct is presumed

22  valid and summary judgment must be granted.  Youngberg, 457 U.S. at 324.

23         **2.     Defendant Reed**

24         Defendant Reed similarly contends that there is no question of material fact as to the

25  adequacy of his professional judgment in maintaining Plaintiff's safety. He contends that his

26  decision not to activate an emergency alarm during one particular incident does not represent

27  a "substantial departure" from professional standards of hospital psychiatric technicians, who

28  are trained to use the alarm only in the event of physical danger. (Doc. 31, p. 19, ¶11).

- 10 -

1  Defendant Reed's conduct did not violate Plaintiff's Due Process rights. Youngberg,

2  457 U.S. at 321 ("[T]he Constitution only requires that the courts make certain that

3  professional judgment in fact was exercised. It is not appropriate for the courts to specify

4  which of several professionally acceptable choices should have been made"). During the

5  July, 2008 incident at issue, Defendant Reed witnessed a verbal altercation between Plaintiff

6  and patient Mr. R, and physically intervened to prevent Mr. R. from grabbing or touching

7  Plaintiff. (Doc. 31, ex. A, p. 29-32). As a result of Defendant Reed's intervention, Plaintiff

8  exited the altercation and avoided physical harm. (Id.). Plaintiff presents no evidence

9  indicating that Defendant Reed's decision to physically intervene is a departure from

10  accepted professional standards. Moreover, Plaintiff was not harmed during this encounter.

11  (Id.). Accordingly, even when viewed in the light most favorable to Plaintiff, no question

12  of material fact exists as to whether Defendant Reed's decision to diffuse the altercation

13  through physical intervention, instead of activating the personal alarm, was a substantial

14  departure from accepted professional judgment. Youngberg, 457 U.S. at 314.

15  ### 3.  Defendants Singh, Meek, and Adams

16  With regard to Defendants Singh, Meek and Adams, Plaintiff claims that Defendants

17  refused to change her housing placement after her cellmate threatened, intimidated, and

18  taunted Plaintiff in February 2009. Plaintiff was ultimately rehoused, where she asserts that

19  she is now "segregated and discriminated" against by Defendant Meek.

20  Defendants contend that they are entitled to summary judgment because Plaintiff's

21  complaint that she was not rehoused quickly enough simply does not rise to the level of a

22  constitutional violation. Defendants contend that CSH responded appropriately and

23  comprehensively to Plaintiff's complaints of verbal threats by increasing supervision of

24  Plaintiff and removing Plaintiff from that unit. (Doc. 31, p. 20).

25  Defendants did not violate Plaintiff's Due Process rights in their handling of

26  Plaintiff's housing complaints. First, while Plaintiff's right to be protected and confined in

27  a safe institution is clearly established, see Youngberg, 457 U.S. at 319-22, "[v]erbal

28  harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C.

- 11 -

1  § 1983." <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136 (9th Cir. 1987) (internal citation omitted).

2  Second, Plaintiff puts forth no evidence persuasive or authority that Defendants' failure to

3  rehouse Plaintiff more expeditiously constitutes a substantial departure from professional

4  standards.  She additionally provides no explanation or support for her claim that Defendant

5  Meek has segregated her in her new housing placement. In contrast, Defendants submit

6  records and internal memos indicating that CSH indeed documented Plaintiff's complaints

7  of threats in February 2009, subsequently increased supervision of her, investigated the

8  alleged harassment, and ultimately rehoused her in March 2009.

9        In the absence of any apparent errors in professional judgment or evidence of

10  discriminatory treatment in handling Plaintiff's housing complaints, Plaintiff has failed to

11  raise a genuine issue of material fact as to unconstitutional living conditions.[6]

12        **B.**    **Alleged Equal Protection Violations**

13        Plaintiff alleges in paragraph 1 of each Count that she was denied Equal Protection

14  when Defendants failed or refused to protect her from the harm of other inmates as a result

15  of Plaintiff's status as an HIV positive, pre-operative transgender female.  (Doc. 35, p. 23,

16  ¶6).

17        "The Equal Protection Clause of the Fourteenth Amendment commands that no State

18  shall deny to any person within its jurisdiction the equal protection of the laws, which is

19  essentially a direction that all persons similarly situated should be treated alike." <u>City of</u>

20  <u>Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985) (internal quotations

21  omitted). An equal protection claim may be established in two ways. The first requires a

22  plaintiff to "show that the defendants acted with an intent or purpose to discriminate against

23

24

25

26       [6] Although neither party mentioned Defendant Adams, *see supra* n.4, Plaintiff alleges that he engaged in the same conduct as Defendants Meek and Singh.  Since this Court has concluded that Plaintiff has failed to adduce a disputed issue of material fact with respect to the actions of Defendants Meek and Singh, the Court will grant summary judgment in favor of Defendant Adams as well.

27

28

the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999).

Plaintiff has not put forth any evidence of discrimination, or discriminatory intent, based on Plaintiff's status as an HIV positive, transgender female, beyond merely pointing out that she has HIV and is a transgender female. Moreover, it is not apparent that transgender individuals constitute a "suspect" class. See Jamison v. Davue, No. CIVS-11-2056 WBS DAD P., 2012 WL 996383, at *3 (E.D. Cal. Mar. 21, 2012) ("transgender individuals do not constitute a 'suspect' class").

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). To state an equal protection claim under this theory, a plaintiff must allege that: (1) she is a member of an identifiable class; (2) she was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Id. at 564.

Plaintiff has not alleged facts to satisfy any of these three factors. Her conclusory statements of discriminatory treatment are insufficient to demonstrate a material issue of fact as to the denial of Equal Protection. Matsushita Elec., 475 U.S. at 586-87.

### C.   Plaintiff's State Law Claims

In her opposition to Defendant's motion for summary judgment, Plaintiff alleges for the first time that, in addition to violations of the federal Constitution, Defendants violated mandatory reporting provisions under California Welfare and Institution Code § 15600. (Doc. 35, p. 2).

FRCP Rule 15(a)(2) enables a party to supplement pleadings and thereby introduce a new cause of action not alleged in the original complaint, "**only** with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2) (emphasis added). In the Court's February 25, 2010 Order, the Court specifically informed Plaintiff of this fact.

- 13 -

1   Because Plaintiff has not provided a proper motion and notice to add a state law claim, any

2   new claim not raised in the Third Amended Complaint is considered waived.

3        **D.**    **Claims Against Two Unidentified CDCR Officers**

4        In Count Four, Plaintiff alleges that Defendants Two Unidentified CDCR Officers

5   fondled her breasts before transporting Plaintiff for medical treatment outside CSH and

6   placed excessively tight metal restraints on Plaintiff's legs, causing her legs to bleed. (Doc.

7   16, p. 5a).  To enable Plaintiff to utilize discovery to identify the unknown defendants, the

8   Court did not previously dismiss these claims. Because Plaintiff has not served these

9   defendants, the claim is dismissed for failure to prosecute.

10        **E.**    **Qualified Immunity**

11        Because the Court finds that summary judgment should be granted in favor of

12   Defendants, the Court does not reach Defendants' arguments regarding qualified immunity.

13   **IV.**    **CONCLUSION**

14        Plaintiff's Opposition does not place any material fact in dispute.

15        **Accordingly,**

16        **IT IS HEREBY ORDERED** granting Defendants Avila, Adams, Singh, Reed, and

17   Meek's Motion for Summary Judgment.

18        **IT IS FURTHER ORDERED** that all remaining Defendants are dismissed for

19   Plaintiff's failure to serve pursuant to Rule 4 of the Federal Rules of Civil Procedure.

20        **IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

21        Dated this 6th day of September, 2012

22

23

24

     Mary H. Murguia
25        United States Circuit Judge
     designated as United States District Judge
26

27

28